* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Chapman and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. At the time of the alleged injury by accident, on January 29, 2006, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the defendant employed three or more employees, and the employer-employee relationship existed between the defendant and plaintiff.
2. The defendant is a duly qualified self-insured employer under the North Carolina Workers' Compensation Act.
3. Plaintiff's average weekly wage on January 29, 2006 was $1,059.83, which generates a workers' compensation rate of $706.28. This stipulation is in lieu of the stipulation contained in paragraph three of the parties' pre-hearing agreement.
4. Plaintiff's Exhibit 1, Industrial Commission Form 18, is admitted into evidence as a document filed by plaintiff's attorney with the Industrial Commission on April 17, 2006.
5. Plaintiff's Exhibit 2, Industrial Commission Form 61, is admitted into evidence as a document prepared by the servicing agent for defendant's workers' compensation program and mailed to plaintiff and filed with the Industrial Commission on or about February 20, 2006.
6. The following records are admitted into evidence as records maintained in the regular course of business of the defendant or the defendant's servicing agent, Specialty Risk Services, Inc:

Plaintiff's Exhibit No. Record
3 Industrial Commission Form 19 dated January 29, 2006
4 Industrial Commission Form 19 dated February 2, 2006
5 Industrial Commission wage chart, Form 22 (3 pages)
6 Injury Illness Report (5 pages)
7 Incident details

Defendant's Exhibit No. Record
1 Physical demands assessment for adjustor (2 pages)
2 Accident log
3 Attendance records from January 1, 2006 through July 1, 2006 (4 pages)
 *Page 3 
7. The following records are admitted into evidence as records maintained in the regular course of activity of the physicians or institutions identified:
Plaintiff's Exhibit No. Physician/Institution
8 Piedmont Occupational and Urgent Care and Joseph Guarino, M.D. (7 pages)
9 Belmont Medical Associates (3 pages)
10 Southeastern Radiology and Brent Steams, M.D.
11 Guilford Orthopaedic and Sports Medicine Center and Frank J. Rowan, M.D., an orthopedic surgeon (11 pages)
12 Hand Rehabilitation Specialists of North Carolina (4 pages)

8. Plaintiff was out of work from March 18, 2006 through April 22, 2006.
9. If this case is found to be compensable, plaintiff was temporarily and totally disabled from March 21 through April 22, 2006.
10. If this case is found to be compensable, plaintiff is entitled to compensation for a seven percent partial disability to the left leg. This stipulation is in lieu of the stipulation contained in paragraph nine of the parties' pre-hearing agreement that the issue of whether plaintiff is entitled to compensation for permanent partial disability is reserved for future decision.
The Pre-Trial Agreement dated January 10, 2007, which was submitted by the parties, is incorporated by reference.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. At the time of the hearing before the deputy commissioner, plaintiff was thirty-nine years old. Plaintiff is a high school graduate and began working for defendant-employer in January 2003. The company manufactured cans, primarily for a nearby brewery. By 2005, plaintiff's assigned job was spray operator, but he would also fill in for absent employees at times, performing their functions. Since he had been trained in the bodymaker adjuster position, he would often fill in for employees who would otherwise be working that position. Between July 12 and October 5, 2005, he worked in the bodymaker adjuster position twenty-one times.
2. In October 2005 plaintiff injured his right knee while away from work. He underwent surgery and was out of work for a period of time afterwards. Dr. Rowan, an orthopedic surgeon, treated and released him to return to work on December 8, 2005.
3. During the month of January 2006, before the incident in question occurred, plaintiff worked in the bodymaker adjuster position six times. The duties for that position including clearing jams on the bodymaker and trimmer machines, changing the tooling on the machines, keeping the machines running and cleaning up the work areas. Unlike his regular assigned area with the spray machines, the bodymakers were located on platforms which were higher than the floor. There were three to four steps up to the platform level. The bodymaker adjuster normally worked on the platform level but would go down the steps to the floor level if there were problems with the trimmer machines, which were located on the floor level.
4. In both his regular job and in the bodymaker position, plaintiff was required to pick up cans which fell out of the machines. The company provided him with a can hook, which was a pole with a hook on the end, so that he would not have to bend over to reach the cans. He could snag a can with the hook and then toss it into a nearby trashcan. *Page 5 
5. Plaintiff worked twelve-hour shifts, four days on and four days off, rotating periodically between day and night shifts. On Saturday, January 28, 2006, he reported for work on the night shift and was assigned to fill in as a bodymaker adjuster. One of the bodymaker machines he was assigned to work with that night was pushing the cans out at enough of an angle that they were causing the trimmer machine to jam more than normal. When the trimmer jammed, cans fell out onto the floor. Since the trimmer was jamming every ten minutes or so, plaintiff had to walk down the steps, clear the jam and pick up the cans frequently during the shift. If the cans fell behind the trimmer, he would have to reach them from the platform level and would squat or crouch down because the can hook was not long enough to cover the distance involved.
6. At approximately 4:00 AM, plaintiff was removing cans which had fallen behind the trimmer by squatting on the platform and reaching down with the can hook to snag them. It took him two to three minutes to pick up all of the cans on the floor behind the machine. He then stood and turned to walk away when his left knee popped. It immediately became painful, but he continued working the remainder of his shift. After leaving work and driving home, he slept until that afternoon. When he woke up, his knee was swollen. Consequently, he called the plant to report the injury and later that night filled out a log entry regarding the injury.
7. Defendant-employer sent plaintiff to the company doctor, Dr. Guarino, who examined plaintiff on February 2, 2006. Dr. Guarino was of the impression that plaintiff had sprained his knee. Dr. Guarino treated him conservatively with icing, a splint, medication, physical therapy and work restrictions, but his knee remained symptomatic. On February 17, 2006, the doctor ordered an MRI. Defendants then denied liability for the workers' compensation claim. Consequently, plaintiff went to his family doctor, who ordered the MRI *Page 6 
and referred him to Dr. Rowan, the orthopedic surgeon who had previously operated on his right knee.
8. Dr. Rowan examined plaintiff on March 7, 2006 and reviewed the MRI films, which revealed a tear of the lateral meniscus. The findings on examination were consistent with a meniscus tear, so Dr. Rowan scheduled plaintiff for surgery. On March 21, 2006, he performed arthroscopic surgery to remove the torn cartilage. Plaintiff next saw the doctor on April 19 and was doing well; therefore, he asked to be released to return to work. Dr. Rowan allowed plaintiff to return to work on April 23 and plaintiff returned to work in his regular job. The doctor ultimately released him from medical care with a seven percent (7%) permanent partial impairment rating to his left leg.
9. Dr. Rowan opined to a reasonable degree of medical certainty that plaintiff's climbing up and down the stairs and squatting during his shift beginning January 28, 2006 "was a direct cause of the lateral meniscal tear," and the Full Commission finds the same as fact. Dr. Rowan explained that the frequent stair climbing and squatting which was required during that particular shift probably weakened the muscles which would normally protect the meniscus and therefore was a contributing factor in the acute meniscal tear plaintiff sustained that morning.
10. The Full Commission further finds that it was unusual for plaintiff to have to climb the steps and squat as much as he did during this particular shift, beginning January 28, 2006.
11. Based on the totality of the competent evidence of record, the Full Commission finds that plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on January 29, 2006.
 * * * * * * * * * * * *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On January 29, 2006, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). An "accident" must involve more than merely carrying on the usual and customary duties in the usual way, but rather involves the interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Harding v. Thomas Howard Co., 256 N.C. 427,124 S.E.2d 109 (1962). In this case, the conditions plaintiff experienced on the shift beginning January 28, 2006 compared to previous shifts when he had been upgraded were unusual due to the malfunctioning bodymaker machine and the conditions resulting from the frequent number of jams in the trimmer. The frequent number of jams caused plaintiff to make an unusually high number of trips up and down the stairs to pick up cans. Accordingly, the greater weight of the evidence shows that the unusual working conditions during the shift beginning January 28, 2006 interrupted plaintiff's work routine and plaintiff was faced with unusual conditions likely to result in an injury.
2. The parties have stipulated that plaintiff was temporarily totally disabled from March 21, 2006 through April 2, 2006. Plaintiff is entitled to payment of compensation at the rate of $706.28 during this period. N.C. Gen. Stat. § 97-29.
3. Plaintiff retains a seven percent (7%) permanent partial impairment to his left leg as a result of his the compensable injury. Plaintiff is entitled to payment of compensation for fourteen (14) weeks for his permanent partial impairment. N.C. Gen. Stat. § 97-31(15). *Page 8 
4. Defendant is obligated to pay for all of plaintiff's reasonably required medical treatment resulting from his compensable injury of January 29, 2006, so long as such treatment is reasonably required to effect a cure, provide relief and/or lessen his disability. This includes treatment by Dr. Guarino, Belmont Medical Associates, and Dr. Rowan, including the surgery performed by Dr. Rowan, as such treatment was reasonable and necessary for relief from the condition of plaintiff's left knee. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at a rate of $706.28 per week for the period of March 21, 2006 through April 2, 2006.
2. Defendants shall pay to plaintiff compensation for fourteen (14) weeks at the rate of $706.28 per week for the seven percent (7%) rating to his left leg.
3. Defendants shall pay all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury when bills for the same have been submitted according to established Industrial Commission procedures.
4. Defendants shall bear the costs of this proceeding.
This the 17th day of December, 2007.
S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 9 
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER *Page 10